# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

UNITED STATES OF AMERICA    )
        )
    v.    )    **Criminal No. 2016-0009**
        )
ANIBAL A. VEGA-ARIZMENDI, et al.    )
        )
    **Defendants.**    )
_____)

Attorneys:
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
**Everard E. Potter, Esq.,**
St. Thomas, U.S.V.I.
    *For the United States*

**Eszart A. Wynter, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Anibal A. Vega-Arizmendi*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Anibal Vega-Arizmendi's "Renewed Rule 29 Motion for Judgment of Acquittal," filed on July 18, 2017 (Dkt. No. 1067); his "Revised Rule 29 Motion for Judgment of Acquittal," also filed on July 18, 2017 (Dkt. No. 1068);[1] and the "Government's Response to Revised Rule 29 Motion," filed on July 31, 2017 (Dkt. No. 1082). For the reasons set forth below, the Court will grant Defendant Anibal Vega-Arizmendi's Motions as to Count 5 and deny them as to Counts 1, 4, and 6 of the Indictment.

---

[1] Defendant Anibal Vega-Arizmendi's "Renewed Rule 29 Motion for Judgment of Acquittal" and his "Revised Rule 29 Motion for Judgment of Acquittal" are two separate motions. The Court has considered the arguments in each Motion.

# I.  BACKGROUND

On May 10, 2016, the Grand Jury returned an Indictment against Defendant Anibal Vega-Arizmendi and other individuals for various offenses relating to an alleged drug trafficking organization. The Grand Jury returned a Superseding Indictment on August 23, 2016, charging additional individuals. The Superseding Indictment states that Defendant Anibal Vega-Arizmendi was part of a drug trafficking organization that operated in Florida, Puerto Rico, St. Croix and other parts of the Caribbean. (Dkt. No. 190 at 2). According to the Indictment, Defendant Anibal Vega-Arizmendi and others "traveled from Puerto Rico to St. Croix, and elsewhere, to participate in the mid-sea retrieval of drugs" and that Defendant Anibal Vega-Arizmendi would occasionally function as a boat captain. (*Id.*). As against Defendant Anibal Vega-Arizmendi, the Indictment charges one count of conspiracy to possess controlled substances with intent to distribute (Count 1) and three counts of attempted possession of cocaine with intent to distribute (Counts 4, 5, and 6).

Jury selection began on May 2, 2017, opening statements began on May 15, 2017, testimony began on May 22, 2017, and the Government rested on June 22, 2017. After the Government rested, each of the six Defendants who proceeded to trial made a motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The Court heard arguments on the motions for acquittal on June 22 and 23.[2] On June 27, 2017, the Court, ruling from the bench, granted Defendant Anibal Vega-Arizmendi's motion for acquittal on Count 5, and denied the

---

[2] Defendant Anibal Vega-Arizmendi also filed a "Memorandum in Support [of] Motion for Judgment of Acquittal" on June 24, 2017. (Dkt. No. 1010).

motion as to Counts 1, 4, and 6.[3] The Court reserved for a later time its articulation of the rationale for the ruling. The trial concluded on July 7, 2017, after the jury was unable to reach a unanimous verdict. The Court declared a mistrial based on manifest necessity, and the jury was discharged.

## II. LEGAL STANDARDS

Rule 29 of the Federal Rules of Criminal Procedure provides that "the Court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Pursuant to Rule 29(c), a "defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). Rule 29 expressly provides that "[i]f the jury has failed to return a verdict, the court may enter a judgment of acquittal." *Id.* For a Rule 29 motion, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McIntyre*, 612 F. App'x 77, 78 (3d Cir. 2015) (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424-25 (3d Cir. 2013)) (quotations omitted) (emphasis in original); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) ("In reviewing a Fed. R. Crim. P. 29 post-verdict motion for judgment of acquittal, a district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001))).

---

[3] With regard to the other Defendants' motions for acquittal, the Court granted the motions on Count 2 as to Defendant Jose Hodge and Counts 5 and 6 as to Defendant Omy Gutierrez-Calderon, and denied the motions in all other respects.

A defendant "challenging the sufficiency of the evidence bears a heavy burden," *United States v. Donna*, 366 F. App'x 441, 450 (3d Cir. 2010), and an insufficiency finding should be "confined to cases where the prosecution's failure is clear," *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (quoting *Smith*, 294 F.3d at 477). It is well-established that, on a Rule 29 motion, evidence should not be viewed in a vacuum but in relation to the totality of the evidence elicited in a case. *See United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012) (noting that, in reviewing a sufficiency of evidence claim, courts "examine the totality of the evidence, both direct and circumstantial" (quoting *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009))) (quotations omitted). Thus, "[t]he question is whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt." *Caraballo-Rodriguez*, 726 F.3d at 432 (quoting *United States v. Cooper*, 567 F.2d 252, 254 (3d Cir. 1977)) (quotations omitted). It is "immaterial" that the evidence may permit a "less sinister conclusion" than one of guilt. *Smith*, 294 F.3d at 478 (quoting *United States v. Dent*, 149 F.3d 180, 188 (3d Cir. 1998)) (quotations omitted). In other words, "the evidence does not need to be inconsistent with every conclusion save that of guilt." *Id.* (quoting *Dent*, 149 F.3d at 188) (quotations omitted).

With regard to Count 1 of the Indictment—conspiracy to possess with intent to distribute more than five kilograms of cocaine—the Third Circuit Model Jury Instructions provide that the Government must prove the following three elements: (1) that two or more persons agreed to possess with the intent to distribute a controlled substance; (2) that the defendant was a party to or member of that agreement; and (3) that the defendant joined the agreement or conspiracy knowing of its objectives to possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the

defendant and at least one other alleged conspirator shared a unity of purpose, and the intent to achieve that objective. Third Circuit Model Jury Instruction 6.21.846B.

While the Government must establish each element beyond a reasonable doubt, "[i]t may do so with direct or circumstantial evidence." *Caraballo-Rodriguez*, 726 F.3d at 425. "Indeed, the very nature of the crime of conspiracy is such that it often may be established only by indirect and circumstantial evidence." *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005). The Third Circuit has noted that "[t]he existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants could not have been carried on except as the result of a preconceived scheme or common understanding." *United States v. Mark*, 533 F. App'x 83, 85 (3d Cir. 2013) (quoting *Brodie*, 403 F.3d at 134) (quotations and ellipses omitted). Nonetheless, "[c]ircumstantial inferences drawn from the evidence must bear a 'logical or convincing connection to established fact.'" *Caraballo-Rodriguez*, 726 F.3d at 425 (quoting *United States v. Cartwright*, 359 F.3d 281, 291 (3d Cir. 2004)).

As to Counts 4, 5, and 6 in the Indictment—attempted possession with the intent to distribute more than five kilograms of cocaine—the Government must prove: (1) that the defendant intended to commit the crime of possession of cocaine with intent to distribute; and (2) that the defendant performed an act constituting a substantial step toward the commission of possession of cocaine with intent to distribute which strongly corroborates or confirms that the defendant intended to commit that crime. Third Circuit Model Jury Instruction 7.01; *see also United States v. Earp*, 84 Fed. App'x. 228, 232-34 (3d Cir 2004). To prove the crime of possession with intent to distribute, the Government must prove that the defendant "(1) knowingly possessed [the] controlled substance with (2) the intent to distribute it." *United States v. Iglesias*, 535 F.3d 150,

156 (3d Cir. 2008) (quoting *United States v. Bobb*, 471 F.3d 491, 497 (3d Cir. 2006)) (quotations omitted). Intent to distribute may be inferred from the quantity of the drug possessed by the defendant. *United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992) ("When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone.").

## III. ANALYSIS

### A. Evidence Adduced at Trial

The following evidence, pertinent to Defendant Anibal Vega-Arizmendi's Motions, was elicited at trial. All of the evidence is based on the testimony of the witnesses and/or grounded in exhibits introduced by the Government.

On April 19, 2012, Gregory DeFelice, an agent with the United States Customs and Border Patrol, stopped a vessel heading to St. Thomas. Six individuals, including Defendant Sergio Quinones-Davila and Lacen Santiago were on the vessel. Also on the vessel was over $400,000 in cash, some of which Defendant Quinones-Davila claimed. Department of Homeland Security Special Agent Louis Penn testified that Defendant Quinones-Davila told him that he was coming to St. Thomas with friends to shop for jewelry and other items and that he would stay wherever his friends were staying.

Timothy Schoenbohm testified that around August 2014 he met Defendant Jose Hodge and they began to plan a "job" in which they would use Schoenbohm's boat to meet with another boat south of St. Croix to collect a load of cocaine.[4] Schoenbohm learned that the job was for Defendant

---

[4] According to the evidence, Schoenbohm was initially a member of the alleged drug organization until November 13, 2014, when he agreed to become a Government confidential source after he was stopped by police following an unsuccessful attempt to retrieve drugs and found to be in unlawful possession of a gun.

Quinones-Davila. Schoenbohm and Defendant Quinones-Davila exchanged texts prior to the job in which Defendant Quinones-Davila encouraged Schoenbohm and assured Schoenbohm of Defendant Quinones-Davila's belief that Schoenbohm was "good." Schoenbohm testified that he and Defendant Hodge went out to sea and successfully retrieved 35 kilograms of cocaine. Schoenbohm further testified that approximately a week after he and Defendant Hodge retrieved the cocaine, Defendant Quinones-Davila traveled to St. Croix and met with Defendant Hodge and Schoenbohm. At the meeting, Defendant Quinones-Davila shook Schoenbohm's hand, told him "good job," and that there was a lot more work to do.

According to Schoenbohm, in October 2014, Schoenbohm and Defendant Hodge began preparations for another job—this time for the retrieval of 71 kilograms of cocaine. Some of the cocaine was for Defendant Hodge and some was for Defendant Quinones-Davila. Defendant Hodge and Schoenbohm made the first trip out to sea to pick up the drugs, but they were unsuccessful. Later, Defendant Anibal Vega-Arizmendi, Defendant Hodge, and Jean Cruz made a second trip out to sea, which was also unsuccessful. On the third trip, Schoenbohm, Defendant Anibal Vega-Arizmendi, and Cruz went out to sea and successfully retrieved the drugs.

Schoenbohm also testified that in early November 2014, Defendant Hodge contacted him about another job in which they would go 65 nautical miles south of St. Croix to retrieve approximately 80 kilograms of cocaine. About one week before Schoenbohm and Defendant Hodge attempted the job, Defendant Gutierrez-Calderon, Schoenbohm, Defendant Anibal Vega-Arizmendi, and Cruz were at a hotel together. While there, Defendant Gutierrez-Calderon gave Schoenbohm a gun so that Schoenbohm would have protection while he was out on the ocean retrieving drugs. When Schoenbohm and Defendant Hodge ultimately went out to sea to try to retrieve the 80 kilograms of cocaine they were unsuccessful. The next day, Defendant Hodge

indicated to Schoenbohm that he did not want to go out to sea to make another attempt that day and that they should relax for a week. Defendant Quinones-Davila called Schoenbohm and asked if he could go out by himself to make another attempt, but he refused.

Schoenbohm further testified as to another job that occurred in December 2014. Schoenbohm was on St. Thomas when Defendant Hodge contacted him about using Schoenbohm's boat to do a job. Defendant Hodge arranged to have Cruz and Gamalier Rohlsen pick up Schoenbohm in St. Thomas and transport him by boat to St. Croix. Once on St. Croix, Schoenbohm observed Defendant Anibal Vega-Arizmendi, Defendant Jean Carlos Vega-Arizmendi, Cruz, and Rohlsen at Chenay Bay. The morning after he arrived on St. Croix, Schoenbohm prepared his boat to go out to sea to retrieve 30 kilograms of cocaine. When Schoenbohm launched his boat, Cruz and Defendant Anibal Vega-Arizmendi left with the boat and later returned to Chenay Bay. Although Schoenbohm had to go back to St. Thomas, Defendant Omy Gutierrez-Calderon asked Schoenbohm to use Schoenbohm's boat to make another attempt to retrieve drugs, and Schoenbohm agreed. Schoenbohm later learned from Rohlsen that 30 kilograms of cocaine were picked up with Schoenbohm's boat and were transported to Culebra.

According to Schoenbohm, in late April or early May 2015, Defendant Hodge and Schoenbohm discussed an upcoming job to retrieve drugs. Defendant Hodge indicated that he would use either Defendant Anibal Vega-Arizmendi or Cruz for the job. In May 2015, Schoenbohm and Drug Enforcement Administration ("DEA") Agent Jeremy Latchman observed a boat known as the Mako flipped over at Chenay Bay. Schoenbohm also observed Defendant Gutierrez-Calderon, Defendant Hodge, and Defendant Anibal Vega-Arizmendi present at Chenay Bay. Defendant Anibal Vega-Arizmendi was trying to flip the Mako back over, and Defendant Gutierrez-Calderon told Schoenbohm, "look, we have mucho problems."

The Government introduced audio recorded conversations that took place between Schoenbohm and Defendant Quinones-Davila in November 2015 in which Defendant Quinones-Davila asked Schoenbohm whether his boat was ready and told him not to go anywhere. Soon thereafter, Defendant Hodge called Schoenbohm and told Schoenbohm to meet him and others at the Pueblo Supermarket parking lot. After Defendant Hodge called Schoenbohm, Defendant Quinones-Davila called Schoenbohm and asked "I surprise you – eh?" Schoenbohm testified that he was, in fact, surprised because the other people Defendant Hodge wanted him to meet at Pueblo Supermarket had suddenly showed up in St. Croix from Puerto Rico. When Schoenbohm went to the parking lot, he saw Defendant Hodge, Defendant Anibal Vega-Arizmendi, and Cruz. Schoenbohm learned that that they were doing a job for Defendant Quinones-Davila, but Schoenbohm was instructed not to tell Defendant Hodge that the job was for Defendant Quinones-Davila.

Schoenbohm, Defendant Anibal Vega-Arizmendi, Cruz, and Juan later went out on the first of several attempts to obtain drugs, but because of rough seas they returned without retrieving the drugs. Afterwards, Schoenbohm, Defendant Hodge, Defendant Anibal Vega-Arizmendi, Cruz, and others were at a hotel where they discussed making a second attempt, and Defendant Hodge assured Schoenbohm that an individual identified as Danny was a good captain and could drive Schoenbohm's boat. The next day, Schoenbohm launched his boat and let others take it on another attempt, but the attempt was again unsuccessful. Schoenbohm testified that Danny, Juan, and Defendant Anibal Vega-Arizmendi later used a green Spider boat on another unsuccessful attempt. As to this attempt, the Government introduced video surveillance of the Spider allegedly returning from the unsuccessful attempt and Defendant Anibal Vega-Arizmendi getting out of the boat and climbing into Schoenbohm's pickup truck at Great Pond on St. Croix. The Government also

introduced evidence that Defendant Gutierrez-Calderon sent money to Schoenbohm on November 12, 2015, via Western Union so that Schoenbohm could fuel his boat for a subsequent attempt to retrieve drugs.

On the last attempt, Schoenbohm met Defendant Hodge, Defendant Burgos-Montanez, Rohlsen, and Danny on a beach where Rohlsen, Danny, and Defendant Burgos-Montanez boarded Schoenbohm's boat and headed east. Schoenbohm and Defendant Hodge got into a minivan and drove away. DEA Task Force Officer Aldemar Santos testified that at about 2:00 a.m. the next morning, he arrived at Knight's Bay and saw Defendant Hodge being detained by another officer. TFO Santos walked along the beach with his flashlight and observed Rohlsen, Defendant Burgos-Montanez, and an unidentified male conversing with each other. When TFO Santos announced "police," two of the three men ran. Law enforcement officers were able to detain two men and discovered four suitcases nearby. It was later determined that the suitcases collectively contained 87 kilograms of cocaine. Later that same morning, TFO Santos observed a man walking along the road and recognized him as the third male who had been on the beach earlier that morning. TFO Santos apprehended the man and later identified him as Defendant Burgos-Montanez.

After the arrest of Defendant Hodge, Defendant Burgos-Montanez, and Rohlsen, Defendant Quinones-Davila had a conversation with Schoenbohm. During the conversation, Defendant Quinones-Davila inquired about the whereabouts of Danny and told Schoenbohm that Schoenbohm's and Danny's names were being called. Schoenbohm understood this to mean that the individuals in jail were accusing him and Danny of setting them up.

After Defendant Anibal Vega-Arizmendi was arrested, he informed officers that he knew a person named "Tim" and then identified Schoenbohm as Tim in a photograph. Defendant Anibal Vega-Arizmendi stated that he had traveled to St. Croix to hang out with Tim and check out girls.

**B. Count 4**

Count 4 charges that on or about December 13, 2014, and December 14, 2014, Defendant Anibal Vega-Arizmendi and others, while aiding and abetting each other, did knowingly and intentionally attempt to possess, with intent to distribute more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride. (Dkt. No. 190 at 12). The Court finds that the Government introduced sufficient evidence for a rational juror to find Defendant Anibal Vega-Arizmendi guilty of Count 4 beyond a reasonable doubt.

To meet its burden of proof regarding Count 4, the Government was required to prove the following two elements beyond a reasonable doubt: (1) that Defendant Anibal Vega-Arizmendi intended to commit the crime of possession of more than five kilograms of cocaine with intent to distribute; and (2) that Defendant Anibal Vega-Arizmendi performed an act constituting a substantial step toward the commission of possession of cocaine with intent to distribute which strongly corroborates or confirms that Defendant Anibal Vega-Arizmendi intended to commit that crime. Third Circuit Model Jury Instruction 7.01; *see also United States v. Earp*, 84 Fed. App'x. at 232-34.

As relevant to Count 4, Schoenbohm testified that Defendant Hodge contacted Schoenbohm about using his boat to perform a job (cocaine retrieval) and that Schoenbohm traveled from St. Thomas to St. Croix for purposes of preparing his boat for the job. Schoenbohm also testified that he saw Defendant Anibal Vega-Arizmendi, Defendant Jean Carlos Vega-Arizmendi, Cruz, and Rohlsen at Chenay Bay when Schoenbohm arrived; that after he prepared his boat to do the job, Cruz and Defendant Anibal Vega-Arizmendi left with the boat; and that after an additional trip, the alleged coconspirators successfully picked up 30 kilograms of cocaine. This is evidence from which a rational juror could conclude beyond a reasonable doubt that

Defendant Anibal Vega-Arizmendi intended to possess cocaine with the intent to distribute, and took a substantial step—departing in Schoenbohm's boat with another alleged coconspirator—to achieve this goal. Accordingly, in view of the foregoing and with the Court's rejection of Defendant Anibal Vega-Arizmendi's contrary arguments, as discussed in Section III.F below, the Rule 29 Motions as to Count 4 will be denied.

### C.    Count 5

Count 5 charges that on or about May 14, 2015, Defendant Anibal Vega-Arizmendi and others, while aiding and abetting each other, did knowingly and intentionally attempt to possess, with intent to distribute more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride. (Dkt. No. 190 at 13). Unlike Count 4, the Court finds that the Government did not introduce sufficient evidence for a rational juror to find Defendant Anibal Vega-Arizmendi guilty of Count 5 beyond a reasonable doubt.

To meet its burden of proof regarding Count 5, the Government was required to prove beyond a reasonable doubt the same two elements as in Count 4. In this regard, the Government introduced evidence of a telephone call between Schoenbohm and Defendant Hodge regarding an upcoming job for which Defendant Hodge stated that Defendant Anibal Vega-Arizmendi might be used. The Government also presented testimony that in May 2015, the Mako flipped over at Chenay Bay. Schoenbohm observed Defendant Gutierrez-Calderon, Defendant Hodge, and Defendant Anibal Vega-Arizmendi present at Chenay Bay where the Mako was flipped over; Defendant Gutierrez-Calderon told Schoenbohm, "look, we have mucho problems"; and Schoenbohm observed Defendant Anibal Vega-Arizmendi trying to flip the Mako back over.[5] In

---

[5] There is also testimony from DEA Task Force Officer Peter Kalme that after Defendant Jean Carlos Vega-Arizmendi's arrest, he confessed that he was in St Croix during the summer of 2015 when the Mako flipped over, and that he had brought a gas tank for the Mako for the purpose of

addition to this evidence specific to Count 5, the Court acknowledges that the evidence of Defendant Anibal Vega-Arizmendi's involvement in other events may be used as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, pursuant to Rule 404(b) of the Federal Rules of Evidence.

Even after considering—as the Court must—the "totality of the evidence, both direct and circumstantial, and interpret[ing] the evidence in the light most favorable to the government" the Court finds that a rational juror could not find beyond a reasonable doubt that Defendant Anibal Vega-Arizmendi is guilty of Count 5. *Pavulak*, 700 F.3d at 668. There is insufficient evidence tying Defendant Hodge's earlier telephone call with Schoenbohm to the incident of the Mako flipping over and Defendant Anibal Vega-Arizmendi's presence at Chenay Bay. Even with Defendant Gutierrez-Calderon's statement that they have "mucho problems," a rational juror could not conclude beyond a reasonable doubt that Defendant Anibal Vega-Arizmendi and others were intending to use the Mako to retrieve drugs. That individuals appear concerned about a capsized boat fails to adequately support the inference that the boat was to be used to retrieve cocaine. Similarly, there is no evidence that any individual took a substantial step to possess cocaine with the intent to distribute. The fact that individuals were trying to flip the Mako back over is consistent with efforts to save the boat and, without more, is insufficient for a rational juror to find that those

---

retrieving a load of cocaine. However, this post-arrest statement from Defendant Jean Carlos Vega-Arizmendi is inadmissible hearsay as against Defendant Anibal Vega-Arizmendi and cannot be used for purposes of the current analysis. *See* Fed. R. Evid. 801(d)(2)(E). It is clear that Defendant Jean Carlos Vega-Arizmendi did not believe that TFO Kalme was a member of the conspiracy and that the post-arrest confession was not made for the purpose of concealing or otherwise furthering the conspiracy. *See United States v. Gibbs*, 739 F.2d 838, 845 (3d Cir. 1984) (noting generally that "statements made to those who are not involved in the conspiracy are not 'in furtherance' of it") (quoting *United States v. Provenzano*, 620 F.2d 985, 1000-01 (3d Cir. 1980)); *cf. United States v. Weaver*, 507 F.3d 178, 186 (3d Cir. 2007) ("statements made for the purpose of concealing a conspiracy can further the conspiracy regardless of whether the addressee is a co-conspirator").

attempting to save the boat were taking a substantial step towards possessing cocaine with the intent to distribute. Simply put, there is insufficient admissible evidence against Defendant Anibal Vega-Arizmendi from which a rational juror could conclude that he committed the essential elements of attempted possession of cocaine with intent to distribute, or aided and abetted someone else in committing the crime as charged in Count 5. Accordingly, in view of the, the Rule 29 Motions as to Count 5 will be granted.

**D.    Count 6**

Count 6 charges that on or about November 9, 2015 through November 12, 2015, Defendant Anibal Vega-Arizmendi and others, while aiding and abetting each other, did knowingly and intentionally attempt to possess, with intent to distribute more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride. (Dkt. No. 190 at 14). The Court finds that the Government introduced sufficient evidence for a rational juror to find Defendant Anibal Vega-Arizmendi guilty of Count 6 beyond a reasonable doubt.

To meet its burden of proof regarding Count 6, the Government was required to prove beyond a reasonable doubt the same two elements as in Counts 4 and 5. In this regard, the Government introduced sufficient evidence that Defendant Anibal Vega-Arizmendi attempted to possess cocaine between November 9, 2015 and November 12, 2015. For example, Schoenbohm testified that Defendant Anibal Vega-Arizmendi was present at the meeting in the Pueblo parking lot with Defendant Hodge at which another individual instructed Schoenbohm not to tell Defendant Hodge that the anticipated job was for Defendant Quinones-Davila. Schoenbohm further testified that Schoenbohm, Juan, and Defendant Anibal Vega-Arizmendi went together on the first attempt to retrieve the drugs but returned due to rough seas. This testimony is sufficient for a rational juror to find beyond a reasonable doubt that Defendant Anibal Vega-Arizmendi intended to possess

14

cocaine with intent to distribute and that he performed a substantial step toward the commission of this crime by going out on the boat with Schoenbohm and Juan in an attempt to retrieve the cocaine. Accordingly, in view of the foregoing and with the Court's rejection of Defendant Anibal Vega-Arizmendi's contrary arguments, as discussed in Section III.F below, the Rule 29 Motions as to Count 6 will be denied.

### E.    Count 1

Count 1 charges that from on or about January 2012 until on or about December 2015, Defendant Anibal Vega-Arizmendi and others did conspire and agree with one another to knowingly and intentionally possess, with intent to distribute, more than five kilograms of cocaine. The Court finds that the Government introduced sufficient evidence for a rational juror to find Defendant Anibal Vega-Arizmendi guilty of Count 1 beyond a reasonable doubt.

To meet its burden of proof regarding Count 1, the Government was required to prove beyond a reasonable doubt the following three elements: (1) that two or more persons agreed to possess cocaine or marijuana with the intent to distribute it; (2) that Defendant Anibal Vega-Arizmendi was a party to or a member of that agreement; and (3) that Defendant Anibal Vega-Arizmendi joined the agreement or conspiracy knowing of its objective to possess cocaine or marijuana with the intent to distribute it and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that Defendant Anibal Vega-Arizmendi and at least one other alleged conspirator shared a unity of purpose and the intent to achieve the objective. *See* Third Circuit Model Jury Instruction 6.21.846B.

The Court finds that the Government introduced sufficient evidence from which a rational juror could conclude that Defendant Anibal Vega-Arizmendi conspired with others to possess more than five kilograms of cocaine with intent to distribute. As noted above, Schoenbohm

testified that in October 2014 he and Defendant Hodge discussed a job in which they would retrieve 71 kilograms of cocaine. Some of the cocaine was for Defendant Hodge and some was for Defendant Quinones-Davila. Schoenbohm further testified that Defendant Anibal Vega-Arizmendi went on two trips out to sea in an attempt to retrieve the cocaine. The first trip, made by Defendant Anibal Vega-Arizmendi, Defendant Hodge, and Cruz, was unsuccessful, but on the second trip, Schoenbohm, Defendant Anibal Vega-Arizmendi, and Cruz successfully retrieved the drugs.

Schoenbohm also testified that in December 2014, at the direction of Defendant Hodge, he came to St. Croix to prepare his boat for another job to pick up 30 kilograms of cocaine. Schoenbohm testified that, after he had prepared his boat for the job, Defendant Anibal Vega-Arizmendi and Cruz left with his boat. Schoenbohm later learned that cocaine was retrieved on another attempt.

Schoenbohm further testified that in November 2015, Schoenbohm, Juan, and Defendant Anibal Vega-Arizmendi together went out to pick up drugs but returned due to rough seas. Afterwards, Schoenbohm, Defendant Hodge, Defendant Anibal Vega-Arizmendi, Cruz, and others were at a hotel together talking about going out to make a second attempt.

Based on this evidence, a rational juror could find beyond a reasonable doubt that Defendant Hodge, Defendant Quinones-Davila, Defendant Anibal Vega-Arizmendi, and others knowingly and intentionally arrived at a mutual understanding to work together to possess more than five kilograms of cocaine with the intent to distribute it. While there is no direct evidence of a formal agreement to engage in cocaine trafficking, there is sufficient evidence that multiple people worked together so that boats from St. Croix would meet with other vessels south of St. Croix to retrieve cocaine. Indeed, Schoenbohm testified that he and Defendant Anibal Vega-

Arizmendi were on such trips, including one in which they successfully retrieved 71 kilograms of cocaine. Based on the circumstances surrounding the scheme and the actions of Defendant Anibal Vega-Arizmendi and other alleged coconspirators, a rational jury could find beyond a reasonable doubt that a conspiracy existed and that Defendant Anibal Vega-Arizmendi was one of its members. *Mark*, 533 F. App'x at 85 ("[t]he existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants could not have been carried on except as the result of a preconceived scheme or common understanding" (quoting *Brodie*, 403 F.3d at 134)) (quotations and ellipses omitted).

There is also sufficient evidence that Defendant Anibal Vega-Arizmendi joined in the conspiracy knowing of its criminal objective and intending to join together with at least one other alleged conspirator to achieve that objective. Schoenbohm testified that in October 2014, Defendant Anibal Vega-Arizmendi made two trips on Schoenbohm's boat, during the second of which they successfully picked up 71 kilograms of cocaine. The evidence further shows that Defendant Anibal Vega-Arizmendi took additional trips on Schoenbohm's boat with other alleged coconspirators in connection with jobs in December 2014 and November 2015. From this evidence, a rational juror could reasonably infer that Defendant Anibal Vega-Arizmendi knew of the conspiracy's objective to possess with the intent to distribute controlled substances at least by October 2014 when he helped successfully retrieve 71 kilograms of cocaine. The later trips Defendant Anibal Vega-Arizmendi made in December 2014 and November 2015 are evidence that, knowing of the conspiracy's objective, he intended to join with other alleged coconspirators and shared a unity of purpose when he went out to sea in an attempt to retrieve more cocaine.

The Court therefore finds that the Government introduced sufficient evidence from which a rational juror could find beyond a reasonable doubt that Defendant Anibal Vega-Arizmendi is guilty of Count 1. Accordingly, in view of the foregoing and with the Court's rejection of Defendant Anibal Vega-Arizmendi's contrary arguments, as discussed in Section III.F below, the Rule 29 Motions as to Count 1 will be denied.

### F.     Defendant Anibal Vega-Arizmendi's Arguments

In his Motions, Defendant Anibal Vega-Arizmendi makes several arguments urging the Court to conclude that the Government has presented insufficient evidence to carry its burden as to each Count. Many of these arguments are based on Defendant Anibal Vega-Arizmendi's assertion that the Court cannot consider Schoenbohm's testimony because it is unreliable and uncorroborated. For example, Defendant Anibal Vega-Arizmendi argues that "[f]or all the evidence offered by Schoenbohm, there was nothing to corroborate his testimony beyond a reasonable doubt," and that "[o]ther than the unreliable testimony of Schoenbohm, there was no proof offered by the government to suggest, even remotely, that Mr. Arizmendi knew or worked with any of the other alleged codefendants in a close interdependent capacity to possess or distribute drugs." (Dkt. No. 1067 at 4;[6] *see also* Dkt. No. 1068 at 12 ("the incredible testimony of Confidential Source, Timothy Schoenbohm, should not be given any weight")). The Court finds that Defendant Anibal Vega-Arizmendi's arguments in this regard do not advance his Rule 29 Motions.

The Third Circuit has cautioned that "[c]ourts must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the

---

[6] Of course, by so arguing, Defendant Anibal Vega-Arizmendi implicitly acknowledges that the Government offered sufficient evidence through Schoenbohm's testimony.

evidence, or by substituting its judgment for that of the jury." *Brodie*, 403 F.3d at 133. In particular, the Third Circuit has noted that "[i]t is not for the court to assess the credibility of witnesses, weigh the evidence or draw inferences of fact from the evidence. These are functions of the jury." *Id.* (quoting 2A Charles A. Wright, Fed. Prac. & Pro. (Criminal 3d) § 467 at 311 (2000)) (quotations omitted). In light of this directive, the Court rejects Defendant Anibal Vega-Arizmendi's assertion that the Court should disregard the testimony of Schoenbohm as unreliable or uncorroborated. Indeed, even if Schoenbohm's testimony were entirely uncorroborated—which the Court does not find to be the case—this would be irrelevant for purposes of Defendant Anibal Vega-Arizmendi's Rule 29 Motions. The standard is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McIntyre*, 612 F. App'x at 78 (quoting *Caraballo-Rodriguez*, 726 F.3d at 424-25) (quotations omitted) (emphasis in original). As set forth above, the Government has met this standard as to Defendant Anibal Vega-Arizmendi on Counts 1, 4, and 6. The Court will decline Defendant Anibal Vega-Arizmendi's invitation to ignore the applicable legal standard and usurp the role of the jury.[7]

---

[7] Defendant Anibal Vega-Arizmendi makes the similar argument that the Government's evidence fails to definitively prove Defendant Anibal Vega-Arizmendi's guilt: "The government's confidential source, Timothy Schoenbohm and DEA Agent, Brian Gaumond testified about the objective of the conspiracy but neither their testimony, nor the documentary and visual evidence definitively confirms that Mr. Arizmendi was involved in the possession of a controlled substance with the intention to sell." (Dkt. No. 1067 at 3). The standard, however, is not whether the Government's evidence "definitively confirms" Defendant Anibal Vega-Arizmendi's guilt. Indeed, the Third Circuit has made clear that "the evidence does not need to be inconsistent with every conclusion save that of guilt." *Smith*, 294 F.3d at 478 (quoting *Dent*, 149 F.3d at 188) (quotations omitted). As discussed more fully above, in accordance with the applicable legal standard, a rational juror could find beyond a reasonable doubt that Defendant Anibal Vega-Arizmendi conspired, and attempted, to possess cocaine with an intent to distribute based on, *inter alia*, Schoenbohm's testimony that Defendant Anibal Vega-Arizmendi took multiple trips on Schoenbohm's boat with others in connection with jobs in which the common goal was to retrieve large amounts of cocaine.

Some of Defendant Anibal Vega-Arizmendi's other arguments are also premised on mistaken interpretations of the law. First, Defendant Anibal Vega-Arizmendi argues that in order to find him guilty of conspiracy, there must be sufficient evidence from which the trier of fact could find, *inter alia*, that "one of the members of the conspiracy performed at least one overt act 2012 [sic] for the purpose of carrying out the conspiracy." (Dkt. No. 1068 at 5; *see also id.* at 11). Although there is ample evidence of overt acts here, the law is clear that "[t]he language of [21 U.S.C. § 846 does not] require that an overt act be committed to further the conspiracy." *United States v. Shabani*, 513 U.S. 10, 13 (1994).

In addition, Defendant Anibal Vega-Arizmendi cites *United States v. Idowu*, 157 F.3d 265 (3d Cir. 1998), *United States v. Cartwright*, 359 F.3d 281 (3d Cir. 2004), *United States v. Rodriquez-Valdez*, 209 F. App'x 178, 179 (3d Cir. 2006), and other cases as examples in which the Third Circuit has overturned convictions for drug conspiracies because the Government failed to introduce sufficient evidence that the defendant knew that the conspiracy's objective was controlled substances. (Dkt. No. 1068 at 6-7). However, in the case of *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431-32 (3d Cir. 2013), the Third Circuit abrogated the reasoning in *Idowu*, *Cartwright*, and *Rodriquez-Valdez*.[8] The Third Circuit noted that in the area of drug conspiracy cases, "it appears that we have examined sufficiency by looking at the evidence under a microscope." *Id.* at 430. The Third Circuit concluded that it had not analyzed these cases with the appropriate amount of deference and noted that "[h]ad we asked the appropriate question—

---

[8] While the Third Circuit in *Caraballo-Rodriguez* did not specifically disavow the case of *Rodriquez-Valdez*, this is not surprising since *Rodriquez-Valdez* is a non-precedential case. Regardless, the Court notes that many of the cases on which *Rodriquez-Valdez* relies—including *Cartwright*, *Idowu*, and *United States v. Wexler*, 838 F.2d 88, 91 (3d Cir. 1988)—*were* expressly disavowed in *Caraballo-Rodriguez*. 726 F.3d at 431-32. In other words, *Rodriquez-Valdez* stems from the same line of cases and uses the same reasoning that the Third Circuit disavowed in *Caraballo-Rodriguez*.

'whether ... *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—we now believe the answer in most, if not all, of those cases would have been 'yes.'" *Id.* at 431 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (ellipses and emphasis in original). In so holding, the Third Circuit "specifically disavow[ed] the reasoning [it] previously embraced—that the jury's verdict could not stand when the evidence was as consistent with contraband other than controlled substances, even though a jury could rationally conclude that the defendant knew the subject of the conspiracy was drugs." *Id.* at 431-32.

Thus, Defendant's reliance on cases such as *Idowu*, *Cartwright*, and *Rodriquez-Valdez* for his proposition that the Government failed to sufficiently prove that Defendant knew that the conspiracy's objective was controlled substances is misplaced. Following *Caraballo-Rodriguez*, the Court examines whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 431 (quoting *Jackson*, 443 U.S. at 319) (quotations omitted) (emphasis in original). As discussed above, under this standard, the Court finds that the Government met its burden as to the conspiracy charge in Count 1.

Defendant Anibal Vega-Arizmendi also argues that Schoenbohm's testimony placing him in a hotel room with other coconspirators in November 2015 after a failed attempt to retrieve cocaine is of little evidentiary value. Schoenbohm testified that Defendant Hodge, Defendant Anibal Vega-Arizmendi, Cruz, and others were at a hotel talking about going out to make a second attempt, and Defendant Hodge assured Schoenbohm that Danny was a good captain and could drive Schoenbohm's boat. Defendant Anibal Vega-Arizmendi argues that "because you are in a room with individuals do [*sic*] not mean you are privy to the conversation and no testimony was provided that the triers of facts could make such a determination." (Dkt. No. 1068 at 10). Defendant Anibal Vega-Arizmendi further argues that there was no testimony indicating that Defendant

Anibal Vega-Arizmendi understood what was being said, was an active participant in the conversation, or was even within earshot of the conversation. (*Id.*). The Court finds this argument to be unavailing in the Rule 29 context.[9]

The Third Circuit has noted in the Rule 29 context that "the contention that the evidence also permits a less sinister conclusion is immaterial" and that "the evidence does not need to be inconsistent with every conclusion save that of guilt." *Smith*, 294 F.3d at 478 (quoting *Dent*, 149 F.3d at 188) (quotations omitted). At trial, Schoenbohm testified that before the hotel conversation took place, he, Juan, and Defendant Anibal Vega-Arizmendi together went out on an attempt to retrieve drugs but returned due to rough seas. Schoenbohm also testified that, after the hotel conversation, Defendant Anibal Vega-Arizmendi and other alleged coconspirators later made another unsuccessful attempt to retrieve drugs—this time, using the green Spider boat. Based on this testimony from Schoenbohm alone, a rational juror could reasonably infer that Defendant Anibal Vega-Arizmendi was an active participant in a conspiracy to possess cocaine with the intent to distribute. The fact that Schoenbohm did not specifically testify as to Defendant Anibal Vega-Arizmendi's actual participation in the hotel conversation does not alter this conclusion.[10] *See*

---

[9] The Court also finds unavailing Defendant Anibal Vega-Arizmendi's argument that the Government failed to prove he was actually a boat captain: Defendant Anibal Vega-Arizmendi "challenges . . . the Court to identify any testimony that establishes the he captained any boats at any time in the United States Virgin Islands." (Dkt. No. 1068 at 12). Of course, the Government was not required to prove that Defendant Anibal Vega-Arizmendi was a boat captain in order to meet its burden as to any of the Counts. Regardless of whether there was any testimony that Defendant Anibal Vega-Arizmendi ever piloted a boat, the Government has presented sufficient evidence—as discussed above—to survive Defendant's Rule 29 challenge as to Counts 1, 4, and 6.

[10] In this regard, Defendant Anibal Vega-Arizmendi also argues that there was no trust between the alleged coconspirators and that they actually "harbored a great deal of animosity towards each other." (Dkt. No. 1068 at 12). Nonetheless, there is ample evidence of the extent to which the alleged coconspirators worked together during multiple events in an attempt to retrieve large shipments of cocaine. As noted by the Second Circuit, it is not uncommon for disagreements to

*Smith*, 294 F.3d at 477 ("The existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants could not have been carried on except as the result of a preconceived scheme or common understanding." (quoting *Gibbs*, 190 F.3d at 197)) (quotations and ellipsis omitted).[11]

In view of the foregoing, Defendant Anibal Vega-Arizmendi's arguments as they relate to Counts 1, 4, and 6 are rejected.

### IV. CONCLUSION

In sum, the Court finds that, viewing the totality of the evidence presented during trial in the light most favorable to the Government, a rational trier of fact could have found Defendant Anibal Vega-Arizmendi guilty beyond a reasonable doubt as to Counts 1, 4, and 6. As to these Counts, Defendant Anibal Vega-Arizmendi's Motions will be denied. In contrast, the Court finds

---

occur in a common enterprise and it is not "inconsistent with such an ongoing, unitary conspiracy that disputes might arise and that switches in affiliation might occur from time to time." *United States v. Aracri*, 968 F.2d 1512, 1522 (2d Cir. 1992) (quoting *United States v. Heinemann*, 801 F.2d 86, 92 (2d Cir. 1986)) (quotations and ellipses omitted); *see also United States v. Gibbs*, 190 F.3d 188, 208 n.11 (noting that "[t]he fact that Gibbs suspected Sydnor of trying to rob him does not negate our conclusion . . . that Sydnor was part of Gibbs's conspiracy"). Thus, the alleged animosity and lack of trust do not alter the Court's conclusion that there was sufficient evidence for a rational juror to find Defendant Anibal Vega-Arizmendi guilty of the Count 1 conspiracy charge beyond a reasonable doubt.

[11] Defendant Anibal Vega-Arizmendi similarly argues that "[h]is presence on the boat—without more—is not evidence of his knowledge of illicit activity," (Dkt. No. 1067 at 3), and that, as it pertains to Count 4, "there has been no testimony where anything illegal can be adduced," (Dkt. No. 1068 at 8). The Court acknowledges that Defendant Anibal Vega-Arizmendi cannot be guilty of conspiracy merely because of his association with other alleged coconspirators, and that it is not illegal to go out on a boat with others. However, the Government may meet its burden by relying on circumstantial evidence. *See Caraballo-Rodriguez*, 726 F.3d at 425. For example, Defendant Anibal Vega-Arizmendi's knowledge of illicit activity can be inferred, *inter alia*, from the evidence, including pursuant to Federal Rule of Evidence 404(b), that he went on multiple trips to retrieve cocaine after having successfully retrieved 71 kilograms of cocaine in October 2014.

that the Government has failed to present sufficient evidence from which a rational trier of fact could have found Defendant Anibal Vega-Arizmendi guilty beyond a reasonable doubt of Count 5. Accordingly, the Court will grant Defendant Anibal Vega-Arizmendi's Motions as to Count 5.

An appropriate Order accompanies this Memorandum Opinion.

Date:  November 22, 2017

_____/s/_____
WILMA A. LEWIS
Chief Judge