# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 2016-0009 |
| ) | |
| ANIBAL A. VEGA-ARIZMENDI, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
**Everard E. Potter, Esq.,**
St. Thomas, U.S.V.I.
    *For the United States*

**Eszart A. Wynter, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Anibal A. Vega-Arizmendi*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Anibal Vega-Arizmendi's ("Defendant Anibal Vega-Arizmendi" or "Defendant") "Rule 29 Motion for Judgment of Acquittal" ("Motion for Judgment of Acquittal" or "Motion") (Dkt. No. 1582), and the Government's Opposition to Defendant's Motion (Dkt. No. 1632). For the reasons set forth below, Defendant's Motion for Judgment of Acquittal will be denied.[1]

---

[1] At the outset of the sentencing proceedings held in this matter on October 30, 2018, the Court announced its ruling that Defendant's Motion for Judgment of Acquittal was denied and that the Court's Opinion would follow. This Memorandum Opinion contains the Court's rationale for its ruling.

## I. BACKGROUND

Defendant Anibal Vega-Arizmendi was charged in Counts 1, 3, and 5 of a Second Superseding Indictment ("Indictment") filed on February 21, 2018 with conspiracy to possess a controlled substance with intent to distribute in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 846, and attempted possession of a controlled substance with intent to distribute in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(A)(ii), and 2. (Dkt. No. 1216).[2]

Count 1 of the Indictment alleged that "[f]rom on or about January 2014 until on or about March 2016," Defendant Anibal Vega-Arizmendi and others "did conspire and agree with one another . . . to knowingly and intentionally possess, with intent to distribute, more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride (cocaine powder) . . . and a detectible amount of marijuana . . . ." *Id.* The Indictment further alleged that during the conspiracy, some of the Defendants traveled by boat south of St. Croix to retrieve cocaine at mid-sea, which was then brought back to St. Croix and transshipped to Puerto Rico. *Id.* at 4. Some of the alleged attempts were successful and other were unsuccessful. Counts 3 and 5 of the Indictment alleged that Defendant Anibal Vega-Arizmendi and others participated in attempts to retrieve cocaine at mid-sea on or around December 13 and 14, 2014 and November 9 through 12, 2015, respectively. *Id.* at 10, 12.

Following trial, the jury returned guilty verdicts against Defendant on all three counts on June 26, 2018. (Dkt. No. 1575). Defendant then filed the instant Motion for Judgment of Acquittal.

---

[2] A first trial in this matter resulted in a mistrial in July 2017. After the filing of the Second Superseding Indictment, a second trial began on April 30, 2018.

2

## II. LEGAL STANDARDS

Rule 29 of the Federal Rules of Criminal Procedure provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). Pursuant to Rule 29(c), a "defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." FED. R. CRIM. P. 29(c)(1). For a Rule 29 motion, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McIntyre*, 612 F. App'x 77, 78 (3d Cir. 2015) (emphasis in original) (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424-25 (3d Cir. 2013) (quotations omitted)); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) ("In reviewing a Fed. R. Crim. P. 29 post-verdict motion for judgment of acquittal, a district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'") (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

A defendant "challenging the sufficiency of the evidence bears a heavy burden," *United States v. Donna*, 366 F. App'x 441, 450 (3d Cir. 2010), and an insufficiency finding should be "confined to cases where the prosecution's failure is clear." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (quotations omitted). It is well-established that, on a Rule 29 motion, evidence should not be viewed in a vacuum but in relation to the totality of the evidence elicited in a case. *See United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012) (noting that, in reviewing a sufficiency of evidence claim, courts "examine the totality of the evidence, both direct and circumstantial") (quoting *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009) (quotations

omitted)). Thus, "[t]he question is whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt." *Caraballo-Rodriguez*, 726 F.3d at 432 (quotations omitted). It is "immaterial" that the evidence may permit a "less sinister conclusion" than one of guilt. *Smith*, 294 F.3d at 478 (quotations omitted). In other words, "the evidence does not need to be inconsistent with every conclusion save that of guilt." *Id.* (quotations omitted).

With regard to Count 1 of the Indictment—conspiracy to possess with intent to distribute more than five kilograms of cocaine—the Third Circuit Model Jury Instructions provide that the Government must prove the following three elements: (1) that two or more persons agreed to possess with the intent to distribute a controlled substance; (2) that Defendant Anibal Vega-Arizmendi was a party to or member of that agreement; and (3) that Defendant Anibal Vega-Arizmendi joined the agreement or conspiracy knowing of its objective to possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that Defendant Anibal Vega-Arizmendi and at least one other alleged conspirator shared a unity of purpose, and the intent to achieve that objective. MOD. CRIM. JURY INSTR. 3RD CIR. 6.21.846B.

While the Government must establish each element beyond a reasonable doubt, "[i]t may do so with direct or circumstantial evidence." *Caraballo-Rodriguez*, 726 F.3d at 425. "Indeed, the very nature of the crime of conspiracy is such that it often may be established only by indirect and circumstantial evidence." *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005) (citations omitted). The Third Circuit has noted that "[t]he existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants could not have been carried on except as the result

of a preconceived scheme or common understanding." *United States v. Mark*, 533 F. App'x 83, 85 (3d Cir. 2013) (quoting *Brodie*, 403 F.3d at 134) (quotations and ellipses omitted). Nonetheless, "[c]ircumstantial inferences drawn from the evidence must bear a 'logical or convincing connection to established fact.'" *Caraballo-Rodriguez*, 726 F.3d at 425 (quoting *United States v. Cartwright*, 359 F.3d 281, 291 (3d Cir. 2004)).

As to Counts 3 and 5 of the Indictment—attempted possession with the intent to distribute more than five kilograms of cocaine—the Government must prove: (1) that Defendant Anibal Vega-Arizmendi intended to commit the crime of possession of cocaine with intent to distribute; and (2) that Defendant Anibal Vega-Arizmendi performed an act constituting a substantial step toward the commission of possession of cocaine with intent to distribute which strongly corroborates or confirms that he intended to commit that crime. MOD. CRIM. JURY INSTR. 3RD CIR. 7.01; *see also United States v. Earp*, 84 F. App'x. 228, 232-34 (3d Cir 2004). To prove the crime of possession with intent to distribute, the Government must establish that Defendant Anibal Vega-Arizmendi: "(1) knowingly possessed [the] controlled substance with (2) the intent to distribute it." *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (quotations omitted). Intent to distribute may be inferred from the quantity of the drug possessed by the defendant. *See United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992) ("When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone.").

### III. EVIDENCE ADDUCED AT TRIAL

The following evidence, pertinent to Defendant Anibal Vega-Arizmendi's Motion, was elicited at trial. All of the evidence is based on the testimony of the witnesses and/or grounded in exhibits introduced by the Government.

Confidential informant Timothy Schoenbohm ("Schoenbohm") testified that around August 2014 he met Defendant Jose Hodge and they began to plan a "job" in which they would use Schoenbohm's boat—the Scorpion—to meet with another boat south of St. Croix to collect a load of cocaine.[3] Schoenbohm learned that the job was for Defendant Sergio Quinones-Davila. Schoenbohm and Defendant Quinones-Davila exchanged texts prior to the job in which Defendant Quinones-Davila encouraged Schoenbohm. Schoenbohm and Defendant Hodge later went out to sea and successfully retrieved 35 kilograms of cocaine. Schoenbohm further testified that after he and Defendant Hodge retrieved the cocaine, Defendant Quinones-Davila traveled to St. Croix and met with Defendant Hodge and Schoenbohm. At the meeting, Defendant Quinones-Davila shook Schoenbohm's hand, told him "great job," and said that there was a lot more work to do.

In October 2014, Schoenbohm and Defendant Hodge began preparations for another job—this time for the retrieval of 71 kilograms of cocaine. Some of the cocaine was for Defendant Hodge and some was for Defendant Quinones-Davila. Defendant Hodge and Schoenbohm made the first trip out to sea to pick up the drugs, but they were unsuccessful. Later, Defendant Hodge, Defendant Anibal Vega-Arizmendi, and Jean Cruz-Albert made a second trip out to sea, which was also unsuccessful. On the third trip, Schoenbohm, Defendant Anibal Vega-Arizmendi, and Cruz-Albert went out to sea and successfully retrieved the drugs. The cocaine was briefly stored at Schoenbohm's residence, and was later transferred to Defendant Hodge's residence. Co-conspirator Carmelo Cruz-Velez arrived on St. Croix in a private plane. Defendant Hodge,

---

[3] According to the evidence, Schoenbohm was initially a member of the alleged drug organization until November 13, 2014, when he agreed to become a Government confidential source after he was stopped by police following an unsuccessful attempt to retrieve drugs and found to be in unlawful possession of a gun.

Schoenbohm, and Cruz-Velez transported the cocaine to the airport in suitcases, where it was loaded onto Cruz-Velez's plane and flown to Puerto Rico.

Schoenbohm testified that Defendant Hodge contacted him in November 2014 regarding an attempted retrieval of an 80-kilogram load of cocaine at sea for Defendant Quinones-Davila. The Government introduced text messages from Defendant Hodge to Schoenbohm in which Defendant Hodge asked Schoenbohm to check "lotto numbers" for him—which Schoenbohm testified referred to GPS coordinates identifying a location for the mid-sea transfer of cocaine between vessels. On November 12, 2014, Schoenbohm and Defendant Hodge traveled on Schoenbohm's boat approximately 65 nautical miles south of St. Croix in an attempt to retrieve a load of cocaine, but were unable to locate the supply vessel and returned to St. Croix. Upon their return, Schoenbohm and Defendant Hodge were stopped by law enforcement in Schoenbohm's truck as they were towing the Scorpion near Chenay Bay. Law enforcement performed a consent search of Schoenbohm's truck and the Scorpion, and discovered a backpack in the truck containing a firearm. Following the vehicle stop and the discovery of the firearm, Schoenbohm met with DEA agents on November 13, 2014 and agreed to become a confidential informant for the Government. Schoenbohm informed law enforcement that Defendant Omy Gutierrez-Calderon gave him the firearm discovered in Schoenbohm's vehicle for protection during mid-sea retrievals of cocaine. That same day, Schoenbohm recorded conversations with Defendants Hodge and Quinones-Davila discussing the attempted retrieval of cocaine. Although Defendant Quinones-Davila encouraged Schoenbohm to make another attempt to retrieve the load of cocaine, Schoenbohm and Defendant Hodge decided not to make another attempt following the vehicle stop.

Schoenbohm further testified regarding a job that occurred in December 2014. Schoenbohm was on St. Thomas when Defendant Hodge contacted him about using

Schoenbohm's boat to retrieve cocaine. Defendant Hodge arranged to have Jean Cruz-Albert and Gamalier Rohlsen-Arizmendi pick up Schoenbohm in St. Thomas and transport him by boat to St. Croix. Once on St. Croix, Schoenbohm observed Defendants Hodge, Anibal Vega-Arizmendi, Jean Carlos Vega-Arizmendi, and Gutierrez-Calderon at a hotel at Chenay Bay during discussions about the retrieval of a 30-kilogram load of cocaine. Schoenbohm testified that Defendant Anibal Vega-Arizmendi, Cruz-Albert, and Rohlsen-Arizmendi made two unsuccessful attempts to retrieve the cocaine on Schoenbohm's boat—the Scorpion. This testimony was corroborated by law enforcement surveillance photographs, including photographs allegedly depicting Defendant Anibal Vega-Arizmendi receiving instructions from Schoenbohm on the use of a GPS navigation device and piloting the Scorpion. Schoenbohm traveled to St. Thomas after the unsuccessful attempts. At Defendant Gutierrez-Calderon's request, Schoenbohm left the Scorpion for use in another attempt to retrieve the cocaine. Schoenbohm testified that he later received a call from Defendant Hodge informing him that the retrieval had been successful and that the Scorpion was in Puerto Rico.

The Government introduced recorded conversations that took place between Schoenbohm and Defendant Quinones-Davila in November 2015 in which Defendant Quinones-Davila asked Schoenbohm whether his boat was ready and told him not to go anywhere. At one point during these conversations, Schoenbohm and Defendant Quinones-Davila discussed boat captains, and Defendant Quinones-Davila stated that he liked "Bebo"—a nickname for Defendant Anibal Vega-Arizmendi. Soon thereafter, Defendant Hodge called Schoenbohm and told Schoenbohm to meet him and others at the Pueblo Supermarket parking lot in St. Croix. After Defendant Hodge called Schoenbohm, Defendant Quinones-Davila called Schoenbohm and asked "I surprise you – eh?"

8

When Schoenbohm went to the parking lot, he saw Defendant Hodge, Defendant Anibal Vega-Arizmendi, and Cruz-Albert, and they talked about the upcoming job.

On November 9, 2015, Schoenbohm, Defendant Anibal Vega-Arizmendi, Cruz-Albert, and an individual identified as Juan went out on the first of several attempts to obtain drugs, but because of rough seas they returned without retrieving the drugs. Schoenbohm testified that Defendant Hodge introduced Schoenbohm to an individual named Danny—a.k.a. Daniel Santiago-Colon—whom Defendant Hodge said was a good captain and could drive Schoenbohm's boat. The next day, Schoenbohm launched his boat and let others take it on another attempt, but the attempt was again unsuccessful. The following day, Santiago-Colon, Juan, and Defendant Anibal Vega-Arizmendi used a green Spider boat on another unsuccessful attempt. The Government introduced surveillance footage allegedly depicting Defendant Anibal Vega-Arizmendi returning to Great Pond on St. Croix on the green Spider boat following this unsuccessful attempt. Before the attempt on the green Spider boat, Defendant Hodge called Schoenbohm in order to retrieve four suitcases from Schoenbohm's boat—three of which Schoenbohm had purchased and one which Defendant Hodge had provided—for use in transporting the cocaine upon its retrieval at mid-sea.

With regard to the last attempt, the Government introduced text messages from Defendant Quinones-Davila to Schoenbohm on November 11, 2015 regarding the transfer of money through Western Union for fuel for Schoenbohm's boat for use in the attempted retrieval of cocaine, as well as additional evidence that Schoenbohm successfully retrieved money from Western Union using the information that Defendant Quinones-Davila provided him. The Government also introduced text messages from Defendant Quinones-Davila to Schoenbohm on November 12, 2015 encouraging Schoenbohm to retrieve the load of cocaine and informing him that he would get a bonus for all of his help. A text message from Defendant Hodge to Schoenbohm on November

9

12, 2015, instructing Schoenbohm to provide his name to Defendant Gutierrez-Calderon, was also introduced by the Government, as was an audio recording of a conversation between Schoenbohm and Defendant Gutierrez-Calderon in which Defendant Gutierrez-Calderon asked for the spelling of Schoenbohm's name and told him to "go now." Schoenbohm testified that these conversations were in relation to the transfer of money through Western Union for fuel for his boat in a subsequent attempt to retrieve drugs.

On November 13, 2015, Schoenbohm, Defendant Hodge, and Rohlsen-Arizmendi brought a gas tank to the beach at Coakley Bay for use in an attempted retrieval of cocaine on Schoenbohm's boat, where they met Defendant Burgos-Montanez and Santiago-Colon. The gas tank was loaded onto Schoenbohm's boat, and Rohlsen-Arizmendi, Santiago-Colon, and Defendant Burgos-Montanez boarded the boat and headed east. DEA Task Force Officer Aldemar Santos testified that at about 2:00 a.m. the next morning, he arrived at Knight's Bay and saw Defendant Hodge being detained by another officer. TFO Santos walked along the beach with his flashlight and observed Rohlsen-Arizmendi, Defendant Burgos-Montanez, and an individual later identified as Alejandro Marva-Romero conversing with each other. When TFO Santos announced "policia," two of the three men ran. Law enforcement officers were able to detain Rohlsen-Arizmendi and Marva-Romero and discovered four suitcases nearby. Schoenbohm identified the suitcases in photographs as the same suitcases that were involved in the earlier attempts. It was later determined that the suitcases collectively contained 87 kilograms of cocaine. Later that same morning, TFO Santos observed Defendant Burgos-Montanez walking along the road and placed him under arrest.

After Defendant Anibal Vega-Arizmendi was arrested, he informed officers that he knew a person named "Tim" and then identified Schoenbohm as Tim in a photograph. Defendant Anibal Vega-Arizmendi stated that he had traveled to St. Croix to hang out with Tim and check out girls.

## IV. DISCUSSION

In his Motion for Judgment of Acquittal, Defendant Anibal Vega-Arizmendi challenges the sufficiency of the Government's evidence as to each of the counts against him.[4]

Before turning to its analysis of the individual counts, the Court addresses Defendant's argument that the Court should decline to consider Schoenbohm's trial testimony in ruling on his Motion because that testimony was "completely incredible and must be disregarded." (Dkt. No. 1582 at 14). It would be inappropriate for the Court to adopt such an approach. The Third Circuit has cautioned that "[c]ourts must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *Brodie*, 403 F.3d at 133. In particular, the Third Circuit has noted that "[i]t is not for the court to assess the credibility of witnesses, weigh the evidence or draw inferences of fact from the evidence. These are functions of the jury." *Id.* (quoting 2A Charles A. Wright, FED. PRAC. & PRO. (Criminal 3d) § 467 at 311 (2000)) (quotations omitted).

---

[4] The Court notes that the content of Defendant's Motion appears in large part to be identical to the Renewed Rule 29 Motion for Judgment of Acquittal that Defendant filed following the first trial in this matter, which resulted in a mistrial. (Dkt. Nos. 1067, 1068). For example, although the Second Superseding Indictment filed prior to the second trial charges Defendant in Counts 1, 3, and 5, Defendant's Motion erroneously asserts that he was charged "in Counts I, IV, V, and VI of the indictment," (Dkt. No. 1582 at 4), and challenges the sufficiency of the evidence against him on a count related to events occurring in May 2015 for which Defendant was not charged in the Second Superseding Indictment or convicted at the second trial, *id.* at 9-10. Obviously, the Court will not address arguments raised in Defendant's Motion in relation to counts for which he was not charged or convicted.

11

In light of this directive, the Court rejects Defendant's argument that the Court should disregard Schoenbohm's testimony as unreliable. The Court will decline Defendant's invitation to ignore the applicable legal standard, and will instead consider Schoenbohm's testimony along with the other evidence introduced at trial in ruling on Defendant's Motion for Judgment of Acquittal.

### A. Count 1

Defendant Anibal Vega-Arizmendi challenges the sufficiency of the Government's evidence against him on each of the elements of the conspiracy charged in Count 1—namely: (1) that two or more persons agreed to possess with the intent to distribute a controlled substance; (2) that Defendant Anibal Vega-Arizmendi was a party to or member of that agreement; and (3) that the Defendant Anibal Vega-Arizmendi joined the agreement or conspiracy knowing of its objectives to possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective. (Dkt. No. 1582 at 5-6).

The Court concludes that the evidence outlined above is sufficient to permit a rational juror to find beyond a reasonable doubt that the Government proved all three elements of the charged conspiracy. First, while there is no direct evidence of a formal agreement to engage in cocaine trafficking, there is sufficient evidence to support a conclusion beyond a reasonable doubt that multiple Defendants worked together to arrange for the mid-sea retrieval of cocaine south of St. Croix from supply vessels carrying that cocaine. As previously noted, "[t]he existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants could not have been carried on except as the result of a preconceived scheme or common understanding." *Mark*, 533 F. App'x at 85 (quoting *Brodie*, 403 F.3d at 134) (quotations and ellipses omitted). Given the nature of the scheme here—which relied on coordination among the various conspirators to

accomplish the exchange of cocaine between the supply vessels at sea and the boats departing from St. Croix to meet them—the evidence introduced at trial supports a logical inference that the activities undertaken by Defendant Anibal Vega-Arizmendi and others could not have been carried on except as the result of a preconceived common understanding.

Second, the evidence presented at trial is sufficient to establish that Defendant Anibal Vega-Arizmendi was a member of the conspiracy to possess cocaine with intent to distribute. That evidence includes: Schoenbohm's testimony that Defendant Anibal Vega-Arizmendi participated in two trips to retrieve cocaine at mid-sea in October 2014, one of which resulted in the successful retrieval of 71-kilograms of cocaine; Schoenbohm's testimony that he was present for discussions at a hotel in Chenay Bay in December 2014 regarding an attempted retrieval of cocaine during which Defendants Anibal Vega-Arizmendi, Hodge, Gutierrez-Calderon, and Jean Carlos Vega-Arizmendi were present; Schoenbohm's testimony that he instructed Defendant Anibal Vega-Arizmendi on the operation of the GPS navigation system and that Defendant Anibal Vega-Arizmendi left with Rohlsen on Schoenbohm's boat in December 2014 for an attempted retrieval of cocaine—as corroborated by DEA photographs; Schoenbohm's testimony that Defendant Anibal Vega-Arizmendi was present for a meeting in November 2015 at the Pueblo Supermarket along with other conspirators in relation to a planned retrieval of cocaine; Schoenbohm's testimony that he went out to sea with Defendant Anibal Vega-Arizmendi and others on November 9, 2015 in an attempt to retrieve drugs; and Schoenbohm's testimony—supported by law enforcement surveillance footage allegedly depicting Defendant Anibal Vega-Arizmendi returning to Great Pond on the green Spider boat following an unsuccessful attempt to retrieve cocaine—that Defendant Anibal Vega-Arizmendi participated in an additional attempt on November 11, 2015 to

retrieve drugs at sea.[5] This same evidence is sufficient to establish the third element of the conspiracy charge—that Defendant Anibal Vega-Arizmendi joined the conspiracy knowing of its criminal objective and intending to join together with at least one other conspirator to achieve that objective.

Defendant cites to *United States v. Idowu*, 157 F.3d 265 (3d Cir. 1998), *United States v. Cartwright*, 359 F.3d 281 (3d Cir. 2004), and *United States v. Rodriquez-Valdez*, 209 F. App'x 178 (3d Cir. 2006) for the proposition that judgment of acquittal should be entered on Count 1 because the Government's evidence was insufficient to prove that Defendant knew that the contraband involved in the conspiracy was controlled substances. (Dkt. No. 1582 at 7-8). However, in the case of *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431-32 (3d Cir. 2013), the Third Circuit abrogated the reasoning in *Idowu*, *Cartwright*, and *Rodriquez-Valdez*.[6] The Third Circuit noted that in the area of drug conspiracy cases, "it appears that we have examined sufficiency by looking at the evidence under a microscope." *Id.* at 430. The Third Circuit concluded that it had not analyzed these cases with the appropriate amount of deference and noted that "[h]ad we asked the appropriate question—'whether ... *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—we now believe the answer

---

[5] With respect to Defendant's argument that there was insufficient evidence presented at trial to identify Defendant as a member of the conspiracy (Dkt. No. 1582 at 13-14), the Court finds that Schoenbohm's identification testimony and the evidence introduced by the Government in the form of law enforcement surveillance photographs and footage was sufficient evidence from which a rational juror could identify Defendant beyond a reasonable doubt as a member of the conspiracy.

[6] While the Third Circuit in *Caraballo-Rodriguez* did not specifically disavow the case of *Rodriquez-Valdez*, this is not surprising since *Rodriquez-Valdez* is a non-precedential case. Regardless, the Court notes that the reasoning in many of the cases on which *Rodriquez-Valdez* relies—including *Cartwright*, *Idowu*, and *United States v. Wexler*, 838 F.2d 88 (3d Cir. 1988)—*was* expressly disavowed in *Caraballo-Rodriguez*. 726 F.3d at 431-32. In other words, *Rodriquez-Valdez* stems from the same line of cases and uses the same reasoning that the Third Circuit disavowed in *Caraballo-Rodriguez*.

in most, if not all, of those cases would have been 'yes.'" *Id.* at 431 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (ellipses and emphasis in original). In so holding, the Third Circuit "specifically disavow[ed] the reasoning [it] previously embraced—that the jury's verdict could not stand when the evidence was as consistent with contraband other than controlled substances, even though a jury could rationally conclude that the defendant knew the subject of the conspiracy was drugs." *Id.* at 431-32.

Thus, Defendant's reliance on cases such as *Idowu*, *Cartwright*, and *Rodriquez-Valdez* for the proposition that the Government failed to sufficiently prove that Defendant knew that the conspiracy's objective was controlled substances is misplaced. Following *Caraballo-Rodriguez*, the Court examines whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 431 (quoting *Jackson*, 443 U.S. at 319) (quotations omitted) (emphasis in original). As discussed above, under this standard, the Court finds that the Government met its burden as to the conspiracy charged in Count 1.

To the extent that Defendant suggests in his Motion that the Government was required to prove that the members of the conspiracy performed at least one overt act in furtherance of the conspiracy to sustain a conviction on Count 1 (*see* Dkt. No. 1582 at 5), the Court notes that this argument is premised on a mistaken interpretation of the law. Although there is ample evidence of overt acts here, the law is clear that "[t]he language of [21 U.S.C. § 846 does not] require[] that an overt act be committed to further the conspiracy." *United States v. Shabani*, 513 U.S. 10, 13 (1994).

In sum, the Court concludes that the evidence introduced at trial is sufficient when viewed in the light most favorable to the prosecution to permit a rational juror to find that the Government established the three elements of the conspiracy charged in Count 1 beyond a reasonable doubt as

to Defendant Anibal Vega-Arizmendi. Accordingly, Defendant's Motion for Judgment of Acquittal as to Count 1 will be denied.

    B.    **Count 3**

Count 3 charges that on or about December 13 and 14, 2014, Defendant Anibal Vega-Arizmendi and others, while aiding and abetting each other, did knowingly and intentionally attempt to possess, with intent to distribute more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride. (Dkt. No. 1216 at 10). The Court finds that the Government introduced sufficient evidence to permit a rational juror to find Defendant Anibal Vega-Arizmendi guilty of Count 3 beyond a reasonable doubt.

To meet its burden of proof regarding Count 3, the Government was required to prove the following two elements beyond a reasonable doubt: (1) that Defendant Anibal Vega-Arizmendi intended to commit the crime of possession of more than five kilograms of cocaine with intent to distribute; and (2) that Defendant Anibal Vega-Arizmendi performed an act constituting a substantial step toward the commission of possession of cocaine with intent to distribute which strongly corroborates or confirms that Defendant Anibal Vega-Arizmendi intended to commit that crime. MOD. CRIM. JURY INSTR. 3RD CIR. 7.01; *see also United States v. Earp*, 84 Fed. App'x. at 232-34.

As relevant to Count 3, Schoenbohm testified that Defendant Hodge contacted Schoenbohm about using his boat to perform a job (cocaine retrieval), and that Schoenbohm traveled from St. Thomas to St. Croix for purposes of preparing his boat for the job. Once on St. Croix, Schoenbohm observed Defendants Anibal Vega-Arizmendi, Jean Carlos Vega-Arizmendi, and Gutierrez-Calderon at a hotel at Chenay Bay during discussions about the retrieval of a 30-kilogram load of cocaine. Schoenbohm further testified that he instructed Defendant Anibal Vega-

16

Arizmendi on the use of a GPS navigation device, and that Defendant Anibal Vega-Arizmendi participated in two unsuccessful attempts to retrieve the load of cocaine using Schoenbohm's boat—the Scorpion. Schoenbohm's testimony is supported by DEA surveillance photographs taken on December 13 and 14, 2014. This is evidence from which a rational juror could conclude beyond a reasonable doubt that Defendant Anibal Vega-Arizmendi intended to possess cocaine with the intent to distribute, and took a substantial step—departing in Schoenbohm's boat with other alleged conspirators in an attempt to retrieve a load of cocaine—to achieve this goal. Accordingly, Defendant Anibal Vega-Arizmendi's Motion for Judgment of Acquittal as to Count 3 will be denied.

**C.     Count 5**

Count 5 charges that on or about November 9, 2015 through November 12, 2015, Defendant Anibal Vega-Arizmendi and others, while aiding and abetting each other, did knowingly and intentionally attempt to possess, with intent to distribute more than five kilograms of a mixture and substance containing a detectible amount of cocaine hydrochloride. (Dkt. No. 1216 at 12). The Court finds that the Government introduced sufficient evidence for a rational juror to find Defendant Anibal Vega-Arizmendi guilty of Count 5 beyond a reasonable doubt.

To meet its burden of proof regarding Count 5, the Government was required to prove beyond a reasonable doubt the same two elements as in Count 3. In this regard, the Government introduced evidence that—when viewed in the light most favorable to the Government—is sufficient to support the jury's finding that Defendant Anibal Vega-Arizmendi attempted to possess cocaine between November 9, 2015 and November 12, 2015. Schoenbohm testified that—following discussions with Defendant Quinones-Davila in early November regarding the retrieval of a load of cocaine at mid-sea and a meeting regarding the job with Defendant Anibal Vega-

17

Arizmendi and other members of the conspiracy at the Pueblo Supermarket—Schoenbohm, Defendant Anibal Vega-Arizmendi, Cruz-Albert, and Juan went together on a first attempt to retrieve the drugs but returned due to rough seas. Schoenbohm also testified that Defendant Anibal Vega-Arizmendi participated in a second attempt to retrieve the load of cocaine using the green Spider boat—testimony which is supported by law enforcement surveillance footage. This evidence—considered alongside the totality of the evidence presented at trial and in the light most favorable to the Government—is sufficient to permit a rational juror to find beyond a reasonable doubt that Defendant Anibal Vega-Arizmendi intended to possess cocaine with intent to distribute, and that he performed a substantial step toward the commission of this crime by going out to sea in attempts to retrieve the cocaine. Accordingly, Defendant Anibal Vega-Arizmendi's Motion for Judgment of Acquittal as to Count 5 will be denied.

## V. CONCLUSION

In sum, the Court finds that, viewing the totality of the evidence presented during trial in the light most favorable to the Government, the evidence is sufficient to permit a rational trier of fact to find Defendant Anibal Vega-Arizmendi guilty beyond a reasonable doubt as to Counts 1, 3, and 5. Accordingly, Defendant Anibal Vega-Arizmendi's Motion for Judgment of Acquittal will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date:  June 19, 2019  _____/s/_____
　　　　　　　　　　　　　　　　　　　　　　WILMA A. LEWIS
　　　　　　　　　　　　　　　　　　　　　　Chief Judge